# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00362-MR
# [CRIMINAL CASE NO. 1:16-cr-00147-MR-WCM-1]

| | |
|---|---|
| CARL JACK HALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [CV Doc. 1].[1]

## I.  PROCEDURAL BACKGROUND

On December 6, 2016, Petitioner Carl Jack Hall ("Petitioner") was charged in a Bill of Indictment with one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count One) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)B)

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:20-cv-00362-MR, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:16-cr-00147-MR-WCM-1.

(Count Two). [CR Doc. 1: Indictment]. Petitioner moved to suppress evidence that was allegedly obtained in violation of his rights under the Fourth Amendment and to dismiss the Indictment for outrageous government conduct.[2] [CR Doc. 18; see CR Docs. 27, 33]. The Magistrate Judge recommended that Petitioner's motion to suppress and to dismiss be denied for the reasons stated in his Memorandum and Recommendation. [CR Doc. 40]. Petitioner waived filing objections. [CR Doc. 41]. Thereafter, this Court accepted the Magistrate's Memorandum and Recommendation and denied Petitioner's motion to suppress. [CR Doc. 44]. On January 2, 2018, the Government filed its witness list for trial. [CR Doc. 45]. Neither David Cavanaugh nor Samantha Ashe was listed. [Id.].

On January 3, 2018, jury selection was conducted. Before the jury was selected, the Court allowed the Government to introduce the plea agreement offered to Petitioner on the record. [CR Doc. 88 at 3: Jury Selection Tr.]. The Government noted, without objection, that it sent an email to Petitioner's attorney on February 9, 2017 including the proposed plea agreement and

---

[2] Petitioner challenged the way law enforcement identified those individuals accessing child pornography in the "Playpen" child pornography website. In December 2014, due to a glitch that revealed the website creator's real Internet Protocol (IP) address, which would have been otherwise well hidden, the FBI was able to locate the creator of Playpen. On February 20, 2015, after having obtained a warrant from a magistrate judge in the Eastern District of Virginia, the FBI took administrative control over Playpen for 13 days. During that time, the FBI identified approximately 8,000 individuals to investigate. [CR Doc. 40 at 3-8]. Petitioner was one of those individuals.

factual basis. [Id. at 4]. Pursuant to this plea agreement, Petitioner could have pleaded guilty to Count Two, for possession and access with intent to view child pornography, and the Government would have dismissed Count One. [See id. at 4-5]. The factual basis, which contained facts consistent with the elements of Count Two and associated relevant conduct, was incorporated into the plea agreement. [See id. at 5-6]. Count Two had no mandatory minimum sentence and a statutory maximum of 20 years, while Count One carried a mandatory minimum sentence of five years and a 20-year maximum sentence. [Id. at 5]. Petitioner acknowledged on the record that he had reviewed the agreement with his attorney and decided not to accept it. [See id. at 5-6].

On January 12, 2018, the Government filed an amended witness list, which included David Cavanaugh. [CR Doc. 46]. The next day the Government filed a second amended witness list, which also included Samantha Ashe. [CR Doc. 47]. Petitioner proceeded to trial on January 16, 2018. The Government called several witnesses, including Ashe and Cavanaugh. [See CR Doc. 85 at 2: Trial Tr.]. Cavanaugh testified, in pertinent part, as follows. Cavanaugh lived with Petitioner in or around 2015 for a period of approximately four to six months at Aston Park Tower[3] in

---

[3] Aston Park Tower was consistently referred to as "Ashton" Park Tower at trial.

3

Asheville, North Carolina. [Id. at 64-65]. Cavanaugh was introduced to Petitioner by Ashe. [Id. at 65, 70]. While Cavanaugh lived with Petitioner, Cavanaugh frequently saw Petitioner use a computer, which was protected by fingerprint access. Only Petitioner was able to access Petitioner's computer, although Petitioner would allow others to use it once accessed. [Id. at 68, 70]. Cavanaugh further testified that he saw Petitioner viewing child pornography on the computer one time in 2015 at Aston Park Tower. [CR Doc. 85 at 72]. In 2016, for approximately two or three months, Cavanaugh lived with Petitioner at a hotel. [Id. at 73]. While staying together at the hotel, Cavanaugh witnessed Petitioner viewing a pornographic video depicting young girls engaging in sexual activities. [Id. at 75-76]. After this second incident, Cavanaugh moved out of the hotel because he did not like what he saw Petitioner doing. [Id. at 76].

Samantha Ashe testified, in pertinent part, as follows. In or around 2014 and 2015, Ashe frequently visited Petitioner's apartment in Aston Park Tower. [CR Doc. 85 at 97, 109, 111]. She stayed overnight only a handful of times. [Id. at 111]. During that period, Petitioner had a laptop computer that was fingerprint and password protected. Only Petitioner's fingerprint was programmed to allow access to the computer and Petitioner did not share the password with anyone. [Id. at 99-100]. Petitioner was "always on

4

the computer." [Id. at 102, 114]. Petitioner would sometimes tell Ashe that she could not use the computer because he was "downloading software." [Id. at 103]. Petitioner could build his own computer and told Ashe that "there was, like, a black hole … a whole Internet that people [don't] know about" and where "people don't know where you're going." [Id. at 103-04]. Ashe once saw Petitioner viewing a pornographic video, which depicted a man "shaving a little girl's private area." [Id. at 104, 106, 114-15]. Ashe never saw anyone but Petitioner viewing child pornography at the apartment. [Id. at 107]. Ashe did not report Petitioner to the police because she did not know it was illegal to view such images available on the internet. [Id. at 115].

Petitioner's counsel moved for a judgment of acquittal under Rule 29 of the Rules of Criminal Procedure at the close of the Government's evidence. [CR Doc. 85 at 137]. Counsel argued that while the Government proved that the computer identified as Petitioner's contained child pornography, the Government had not proven that it was Petitioner and not someone else in the apartment that put it there. [Id.]. The Court denied Petitioner's Rule 29 motion, reasoning that, "taking the evidence in the light most favorable to the government a rational jury could determine that the defendant was the one who had sole access to the computer for the purpose

5

of receiving and possessing and dealing with the images on that computer."[4] [Id. at 139].

Petitioner then testified on his own behalf. He explicitly and repeatedly denied ever accessing or viewing any child pornography on his computer and surmised that guests in his apartment, who had access to his password, must have been responsible for the pornography. [See id. at 155-215]. Specifically, Petitioner testified that he gave out his WiFi password to guests and that the WiFi password was the same as his computer password. He further testified that he wrote the WiFi password (and, therefore, his computer password) on a piece of masking tape on the router. [Id.]. He also testified that Cavanaugh was "a whole lot more capable than [he] let on." [Id. at 166].

The jury found Petitioner guilty on both counts. [CR Doc. 55: Jury Verdict]. A probation officer prepared a Presentence Investigation Report (PSR) in advance of sentencing. [CR Doc. 67: PSR]. The probation officer recommended a Total Offense Level of 32, which included a total increase of 12 levels for specific offense characteristics under U.S.S.G. §2G2.2(b), and a criminal history category of IV. [Id. at ¶¶ 20-23, 30, 56]. This yielded

---

[4] Petitioner's attorney renewed her Rule 29 motion at the close of all the evidence. The Court denied it for the same reason as stated at the end of the Government's evidence. [CR Doc. 85 at 221-22].

a guideline range of 168 to 210 months' imprisonment. [Id. at ¶ 118]. At sentencing, however, the Court found the guideline range to be "of no guidance to the court in this case as it is with respect to the vast majority of cases under this statute." [CR Doc. 87 at 34: Sentencing Tr.]. The Court, instead, "look[ed] strictly to the factors for sentencing under the statute Section 3553(a)." [Id.]. Ultimately, the Court sentenced Petitioner to concurrent sentences of 108 months on each count. [CR Doc. 72 at 2; see CR Doc. 87 at 37]. Judgment was entered the next day. [Id.].

Petitioner appealed the Court's judgment. [CR Doc. 74: Notice of Appeal]. On appeal, Petitioner challenged the denial of his motion for judgment of acquittal under Rule 29 and the propriety of one of the Court's jury instructions and argued that, at sentencing, the Court deprived him of effective assistance of counsel. United States v. Hall, 785 Fed. App'x 98, 99 (4th Cir. 2019). The Fourth Circuit affirmed this Court's judgment on August 29, 2019. Id. at 101. Petitioner did not petition the Supreme Court for a writ of certiorari.

On December 4, 2020, Petitioner timely filed the instant Section 2255 Motion to Vacate.[5] [CV Doc. 1]. In his motion, Petitioner argues that he

---

[5] Petitioner declared under penalty of perjury that he placed his motion in the prison mailing system on November 27, 2020 and the correctional facility's stamp on the envelope reflects the same. [CV Doc. 1 at 12; CV Doc. 1-7 at 2].

received ineffective assistance of counsel where (1) his attorney identified and disclosed witnesses who may testify for the defense when she knew the witnesses were going to testify against the defense, and one of these witnesses was previously unknown to the Government; (2) there was a conflict of interest between Petitioner and his attorney; (3) his attorney's representation was deficient relative to a plea bargain; and (4) Petitioner was not consulted on the issues raised in his direct appeal. [CV Doc. 1 at 4-5, 7-8]. For relief, Petitioner asks "to be allowed to accept whatever plea bargain and terms originally offered." [Id. at 12]. He does not request a new trial. [See id.].

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" to determine whether

the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that Petitioner's Motion to Vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry,

540 U.S. 1, 8 (2003). The prejudice prong inquires whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

### A. Conflict of Interest

To establish ineffective assistance arising from a conflict of interest, a "petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007)

(quoting Cyler v. Sullivan, 446 U.S. 335, 348 (1980)).  "An actual conflict of interest arises 'when a defense attorney places himself in a situation inherently conducive to divided loyalties … If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists.'"  Whelchel v. Bazzle, 489 F.Supp.2d 523, 535 (D.S.C. Dec. 18, 2006) (quoting Duncan v. State, 315 S.E.2d 809, 811 (S.C. 1984)).

Here, Petitioner claims he is entitled to relief under § 2255 because of an alleged conflict of interest between himself and his attorney.  Petitioner does not explain or describe the nature of the alleged conflict of interest itself, but only recites a laundry list of disagreements with his attorney.  [See CV Doc. 1-4 at 1-3].  For instance, Petitioner states that his attorney refused to get Petitioner a bond hearing because she claimed that Petitioner "[is] a threat to his community;" revealed the nature of the charges against Petitioner to an employee of Homeward Bound because she "felt it was [her] responsibility;" told Petitioner during the course of one of their interviews that she "just want[ed] to know the truth;" prepared a motion that contained a mistake, which she fixed after Petitioner "threatened to contact the newspapers about her lack of diligence if she did not correct the matter;" and refused to remove a prospective juror who "twice made it clear that she was emotionally involved somehow in the topic of the charges."  [Id.].

Petitioner has not supported a claim of ineffective assistance arising from his attorney's alleged conflict of interest. Petitioner fails in the first instance to show that an actual conflict of interest existed. Petitioner has not shown or even suggested that his attorney was in a position of divided loyalties or owed a duty to a party whose interests were adverse to Petitioner's. See Whelchel, 489 F.Supp.2d at 535. Rather, Petitioner's list of complaints is just that. Moreover, to the extent Petitioner's claims implicate decisions related to trial strategy, trial counsel "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chance of success." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). Such claims, as framed by Petitioner, will not be entertained here, as every effort must "be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689, 104 S. Ct. at 2052. Moreover, Petitioner does not show how he was prejudiced as a result of this alleged, though unsupported, conflict. This claim will, therefore, be dismissed.

**B.    Plea Bargain**

Defendants are entitled to effective assistance of competent counsel during plea negotiations. McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441 (1970). Effective assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the

prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145, 132 S. Ct. 1399, 1408 (2012). This duty certainly applies where a plea offer is formal and with a fixed expiration date. Id. Moreover, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forego." Libretti v. United States, 516 U.S. 29, 50-51, 116 S. Ct. 356, 368 (1995).

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," a petitioner must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Frye, 566 U.S. at 147, 132 S. Ct. at 1409.

Petitioner contends that "counsel discussed the plea arrangement with [him] only once." Petitioner claims that "[i]t was spoken of in a derogatory manner and during the context of allowing her to challenge the F.B.I. in Court." [CV Doc. 1-5 at 1]. Petitioner also asserts that "the advantages and disadvantages of the Plea agreement" were never explained. [Id. at 2]. The record here, however, plainly demonstrates that counsel discussed the plea

agreement, which included the incorporated factual basis, with Petitioner. He acknowledged on the record that it was his decision not to accept it and to proceed to trial, and that he was satisfied with counsel's services in this regard. [CR Doc. 88 at 5-6]. Now, however, Petitioner asks to be given a second chance to plead in accord with the "plea bargain and terms originally offered." [CV Doc. 1 at 12]. Having chosen to have the jury decide and having been convicted, there is no basis in the record to allow Petitioner to now re-open and accept the plea he rejected.

Moreover, Petitioner maintained his innocence through sentencing, going so far as to blame others at trial, including his own friends, for accessing the images. It seems highly dubious that Petitioner would have accepted a plea deal even with the most thorough explanation of the advantages and disadvantages of pleading guilty in any event. The Court will, therefore, dismiss this claim for relief under § 2255.

### C. Trial Witnesses

Petitioner claims that his counsel's assistance was ineffective because she identified witnesses for trial who she knew were going to give hostile testimony and because one of these witnesses, presumably

Cavanaugh, was previously unknown to investigators.[6] Petitioner further argues that, without the testimony of these witnesses, his Rule 29 motion would have been granted because "the Judge denied said motion due to the presence of the Witnesses … <u>only</u>." [CV Doc. 1-3 at 1-2]. Petitioner's claim is without merit.

Petitioner grossly mischaracterizes the Court's ruling on Petitioner's Rule 29 motion at trial. In response to Petitioner's counsel's argument, the Government argued as follows:

> Your honor, taking the evidence in the light most favorable to the government, you will find we have a computer where there is no evidence that anyone ever accessed child pornography on it except for the defendant. It's complete with computer forensic information that matches this particular computer to the Play Pen website by virtue of its MAC address that this computer accessed particular posts on there that caused the images to be received on that computer and that there are in fact evidence of accessing child pornography.
>
> And that the evidence of the Play Pen access is in fact on that computer. There we look to see if there is child pornography on there. And, yes, indeed there is child pornography. And we can see from analyzing the computer the instances of accessing child pornography, it can be found, is frequent. There are file names indicative of child pornography that are accessed once a week or several times a month,

---

[6] No defense witness list was filed before trial, nor does the record support Petitioner's claim that Cavanaugh was unknown to investigators before Petitioner's counsel allegedly identified Cavanaugh.

> or just dozens of times throughout the period in which this is the computer in possession of Mr. Hall. We also have witnesses who came to testify that saw him in possession and control of the computer, and that they saw child pornography on that computer in his possession.
>
> Your honor, just taking all of these circumstances in the light most favorable to the government, we think you should deny the defendant's motion.

[CR Doc. 85 at 137-38]. As noted above, the Court found, "in taking the evidence in the light most favorable to the government a rational jury could determine that the defendant was the one who had sole access to the computer for the purpose of receiving and possessing and dealing with the images on that computer and that … a sufficient body of evidence has been presented to get beyond the Rule 29 stage." [Id. at 139]. As such, in denying the Rule 29 motion, the Court did not rely on the testimony by Ashe or Cavanaugh that they had witnessed Petitioner viewing child pornography. Rather, the Court noted that there was a sufficient body of evidence from which a rational jury could conclude that Petitioner had sole access to his computer. Moreover, absent the testimony of Ashe and Cavanaugh at this stage, there would have been no evidence of other individuals who could have been responsible for accessing the pornography on Petitioner's computer, only undisputed forensic evidence. After denial of the Rule 29

motion, Petitioner testified that many others who visited his apartment, including Ashe and Cavanaugh, had access to his computer and that someone else was responsible for the child pornography on his computer.

Petitioner has failed to show deficient performance or prejudice on this issue. As to Ashe, even according to Petitioner, she was known to the Government before Petitioner's counsel allegedly identified her as a defense witness. As to Cavanaugh, assuming for the sake of argument that Petitioner's attorney identified him and that he was previously unknown to the Government, Cavanaugh's existence and relationship with Petitioner supported Petitioner's defense strategy at trial. Cavanaugh consistently resided with Petitioner during the relevant period and was the person to whom Petitioner would point as the alternative suspect. Petitioner testified that he gave out his WiFi password to guests and that the WiFi password was the same as his computer password. He further testified that he wrote the WiFi password (and, therefore, his computer password) on a piece of masking tape on the router. Petitioner testified that Cavanaugh knew the password. As such, to the extent that Petitioner's counsel identified Cavanaugh as witness, such decision fell well within the wide range of reasonable professional assistance. Harrington, 562 U.S. at 104 (citation omitted).

Finally, Petitioner does not ask for a new trial but only to plead guilty in accordance with a previously offered plea agreement. As such, even if Petitioner's could show deficient performance and theoretical prejudice, which he has not, Petitioner's claim still fails.

**D.  Appeal**

Courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., that he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Petitioner claims that he received ineffective assistance of appellate counsel because he was not consulted regarding the issues raised in his appeal. [CV Doc. 1-6 at 1]. Petitioner, however, fails to state what issues should have been raised or to show that there was a reasonable probability that the outcome would have been different had those unspecified issues been raised. Petitioner's claim on this ground, therefore, fails and will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate is denied and dismissed.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of

appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: April 30, 2021

Martin Reidinger
Chief United States District Judge